I would take it. I don't need to reintroduce myself. Your Honor, I represented Larry Eugene Taylor in the jury trial in the District Court of Idaho. We probably do need to have you state your name just so that our records can be clear. All right. And I am Christina Hunt from the Federal Defender's Office of Eastern Washington in Idaho. Thank you. Your Honor, this case is very simple. It boils down to basically one issue. Did the government prove that Larry Eugene Taylor was an Indian, which is an essential jurisdictional element of the offense he was charged with? There was absolutely no proof during the jury trial that Mr. Taylor was an enrolled member of any Native American tribe. There were no tribal certificates, no tribal enrollments, no evidence in regards to that at all. He doesn't have to be an enrolled member to be an Indian, does he? That is correct. He does not need to be. But in addition to the fact that there was no failure to show enrollment, there was also no failure to show a number of other things. Had he ever received Indian services? There was no evidence of that. Had he ---- Well, it's not really about what there's no evidence of. Let's talk about what there was evidence of and why that wasn't sufficient. All right. Isn't that really the inquiry? Sure. And I believe that the evidence ---- Like he lived on the reservation, he left, he came back, you know, all of those things. Right. And whether that set of facts that obviously they're entitled to and the, you know, the appropriate inference, so were those enough? And I believe that the answer is no. The evidence ---- this is the evidence of whether or not he was Indian. He was the second cousin to a woman who was part Indian and who was also the victim in this case, Miley Lawyer. The evidence at trial showed that Ms. Lawyer was the offspring of a Nez Perce Indian and a mother who was part Indian, who had had a descendant ---- was the descendant of a man named Joe Renshaw, a fur trader who founded Denver, and a woman who was part Sioux. So his second cousin is with Miley Lawyer. Her father is the full-blooded Nez, right? And her mother was the daughter of a Sioux who married a French fur trader, right? Correct. And in that particular family relationship, he is not related through the father, it appears, of Miley Lawyer, but rather through the mother, mother's side, because there was also evidence that Ms. Lawyer had another cousin. The maternal grandfather and Lawyer's mother were siblings. Right. It's like I've got a family tree here. Right. It's a little confusing. But I think what we do see when we look at that is that the evidence of genealogy of Indian genealogy is very thin. In other words, we don't know what degree of blood. We don't know anything other than that. There was evidence at the trial that he had lived on the reservation on and off for periods of time. There was no evidence, and there is no evidence to suggest that if you live on the reservation, you must receive tribal benefits or some sort of thing, or that you're even Native American. What does it have to be to be an Indian? Well, I think there has to be, when you look at the Major Crimes Act, the Major Crimes Act offers a very limited intrusion of Federal power into the exclusive jurisdiction of the Indian tribe. Does the – does any of the case law say what the degree of blood is? The answer is no. What the case law says is you must look at the totality of the circumstances. In other words, it's not appropriate for the Federal Government to come in and charge someone because an act occurred on Indian land without proof of that jurisdictional element. In other words, this would not be a Federal case unless and until a government can prove that Mr. Taylor was an Indian. And the proof in this case was extraordinarily thin to the point really of nonexistence. The proof ostensibly was he was part Indian and lived on the reservation. Well, the problem with that is, does that mean that if you are one one-hundredth of an Indian, right? It has to be. Well, I think that there has to be more than just a drop of Indian blood. I think when you look at the case law and you look at also what Congress has done in looking at all of the other ways in which Indian is defined under all the other programs, you need to look at more than just the degree of Indian blood. Well, if Renishaw's wife were 100 percent Sioux, he'd be an eighth Indian, wouldn't he? No. Because the mother, Renishaw's wife, was not 100 percent Indian. Do we know that? Yes. That's in the record. I don't know how much Indian she was. No, we do not. The record was unclear on that. So he's an eighth or less. At best, he's an eighth. And beyond that, we do not know, because we do not know the degree of blood of the arbitrator's wife. And that's the only link here to whether or not he's an Indian. I don't think that growing up on the reservation in and of itself, and the government didn't really specify exactly how long he spent on the reservation as a child, where he lived. He came back to the reservation, too. He came back to the reservation. He came back to that area, yes, which I think is very different than saying I'm back on Lathway, Idaho. Are there any other questions from the panel? Thank you. Good morning. My name is Nancy Cook. I represent the United States in this matter, United States v. Larry Eugene Taylor. First of all, counsel and I thoroughly agree that the government failed to prove by direct evidence. But clearly, the evidence was sufficient for the jury to find the defendant was an Indian. Starting from the end, sort of moving forward, counsel, during her closing argument had the evidence in mind. I mean, is that pretty much what we've stated? That proof of, I mean, he went, he lived on the reservation. He left. He came back to the area because he wanted to get back to his roots or something. There was some statement along those lines, I think. And then we've talked about the genealogy, so that would make him at best an eighth or less. Well, I disagree at one point with counsel regarding Renshaw's wife, which is Miley Lawyer's mother. There is no evidence she is not, Sue, full-blooded. But I can't say that there is any evidence that she was Miley Lawyer's mother. Well, what was the evidence the jury had? The evidence the jury had was basically, as counsel stated, Miley Lawyer was first cousin to Ida Taylor. Ida Taylor was aunt to Larry Taylor. Larry Taylor was second cousin to Miley Lawyer. The defendant grew up on the Nez Perce Reservation. According to Miley Lawyer, she said she's known him all his life. When he was a little boy, there was a scenario that went in regarding that her, Ms. Lawyer, and Mr. Taylor's mother spent time together, cooked together. She gave an example of the kids doing things, and she was a part of it when he was young. His own testimony, as you stated, was that he came back to reestablish family relations. He stated that to Tom Pollack at the time he was questioned regarding the offense at hand. He said he wanted to redevelop those relationships, that he lived clearly on the reservation. The crime was committed on the reservation. That ---- So the question is, is that enough? Correct. And I believe ---- The jury thought it was enough, but the question is, is it enough? Correct. One other thing, Your Honor, was that Mr. Taylor's, the defendant's, mother lived on the reservation. The case law has established that enrollment is not conclusive, and it's not the only way to prove that a defendant isn't an Indian under the law. And as time passes, using the bloodline as a means is more and more distant to a full-blooded anyone in the United States of America. I mean, people are free to marry whomever they choose with whatever historical and genealogical past. And the defendant cited U.S. v. Broncho, which also states, as many of the government's cases, that enrollment is just one way. Circumstantial evidence can prove it. And you should look to the totality of the circumstances, which the jury did. And they found that he was an Indian. The United States cited in its brief an article by F. Cohen regarding this specific incident, and I know the courts have read that, and I don't feel any reason to basically go over that any more than what, unless you have any specific questions regarding that, where he talks about is one-half enough, is one-eighth enough, what actually constitutes an Indian. And all the case law and this article seem to indicate you look at the totality of the circumstances. He lived on the reservation. He acted as a member of the tribe. He lived with the family members, which he has denoted he wanted to come back to the reservation and reestablish his relationships. This lawyer testified he lived there as a young boy. He came back and lived with his aunt, all on the reservation. All this took place on the reservation. And I think one thing that the jury did consider was the fact that what was involved in the crime were Indian artifacts. This whole episode evolved around Indian artifacts with the Indians involved in it, being this lawyer as a victim and Mr. Taylor as the defendant who stole those items and sold them. If there's any other questions, I'll be more than happy to answer them. Thank you very much. Just briefly, Your Honor, I think the issue of what was stolen, which were Indian artifacts, is completely separate and apart from the question before the Court. The question before the Court is, is the evidence as – was the evidence as presented legally sufficient to show that Mr. Taylor was an Indian under purposes and under provisions of the Major Crimes Act? Again, the only thing we have here is a very limited amount of genealogy knowledge regarding not really Mr. Taylor at best, but the other people involved in this case. And the other thing that we have is that he lived in the Lackaway area on the reservation, which is a common terminology if you live in the Lackaway reservation. We don't even know if specifically the home that he lived in was boundary-wise on the reservation. We know that a layperson, this lawyer claims that – who was also the victim in this case – claims that he lived on the reservation. That was the end of the proof here. This was a case, quite frankly, that could have been very easily taken care of by the government just submitting tribal enrollment. And the government, for whatever reason, failed to do that. Based on that, they're left with did they present enough evidence that's legal, legally sufficient to show that Mr. Taylor was Native American, and it's our position that they did not. Thank you. Thank you. At this time, the matter of the USA v. Larry Eugene – Lawrence, let's see, Larry Eugene Taylor will stand submitted.
judges: Hall, Callahan, Bertelsman